1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   INTERSTATE FIRE & CASUALTY                    No.  2:17-cv-01795-KJM-AC
     INSURANCE COMPANY,
12                                                 ORDER
                    Plaintiff,
13
            v.
14
     FIRST SPECIALTY INSURANCE
15   COMPANY et al.,

16                  Defendants.

17

18          In this insurance coverage dispute, plaintiff Interstate Fire & Casualty Insurance

19   Company ("Interstate") and defendant First Specialty Insurance Company ("First Specialty") both

20   move for summary judgment on Interstate's claims with respect to six of the underlying

21   construction defect cases at issue.  For the foregoing reasons, the court GRANTS Interstate's

22   motion in part and DENIES it in part, and also GRANTS First Specialty's motion in part and

23   DENIES it in part.

24   I.     BACKGROUND

25          This case arises out of 15 underlying construction defect actions in Nevada and

26   California.  *See* First Am. Compl. ("FAC"), ECF No. 19-1.  Due to the number of underlying

27   cases and issues, the court bifurcated discovery into two phases.  ECF No. 28 at 2.  Phase I,

28   relevant here, is limited to six underlying cases involving subcontractors insured by commercial

                                                    1

general liability (CGL) policies issued by both plaintiff Interstate Fire & Casualty Insurance

Company ("Interstate") and First Specialty Insurance Company ("First Specialty" or "FS").  *Id.*

The six cases are:

> (1) *Allred v. Ranchwood Homes Corp.,* Merced County Superior
> Court, Case No. CVM 019667 ("*Allred*");
>
> (2) *Alstatt v. Centex Homes*, District Court of Clark County,
> Nevada, Case No. A-13-683173-D ("*Alstatt*");
>
> (3) *Baker v. Mello,* Merced County Superior Court, California,
> Case No. CVM014943 ("*Baker*");
>
> (4) *Ceccarelli Living Trust v. Centex Homes,* District Court of Clark
> County, Nevada, Case No. A-15-722350-D ("*Ceccarelli*");
>
> (5) *Paradise Court HOA v. DR Horton, Inc*, District Court of Clark
> County, Nevada, Case No. A-09-590365 ("*Paradise Court*");
> and
>
> (6) *Wigwam Ranch East Twilight HOA v. DR Horton,* District Court
> of Clark County, Nevada, Case No. A-14-710333-D ("*Wigwam
> Ranch*").

*See generally* Interstate Mot. for Summ. J. ("Interstate MSJ"), ECF No. 40.  It is undisputed that

the relevant provisions of the insured's First Specialty CGL policy in the six underlying actions

are the same.  Specifically, all of the First Specialty CGL policies at issue included the following

provisions:

> 1.a.  We will pay those sums that the insured becomes legally
> obligated to pay as damages because of "bodily injury" or
> "property damage" to which this insurance applies. We will
> have the right and duty to defend the insured against any
> "suit" seeking those damages.
>
> 1.b. This insurance applies to . . . "property damage" only if:
> . . . . [t]he . . . "property damage" occurs during the policy period[.]

First Specialty Statement of Undisputed Material Facts ("FSUMF") 2, ECF No. 43-2.  Each First

Specialty policy includes the following definitions of "property damage" and "occurrence":

///// 

///// 

2

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Interstate Fire Statement of Undisputed Material Facts ("IUMF") 46, ECF No. 40-2.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Id.*  "Physical injury to tangible property," a standard definition in the insurance industry, is generally interpreted to cover damage caused "when the insured's defective materials or work cause injury to property other than the insured's own work or products," and not the cost associated with the defective or inferior work itself.  *F & H Constr. v. ITT Hartford Ins. Co.*, 118 Cal. App. 4th 364, 371–73 (2004) (citing, *inter alia*, *Aetna Cas. & Sur. Co. v. McIbs, Inc.*, 684 F. Supp. 246, 248 (D. Nev. 1988), *aff'd sub nom. Aetna Cas. & Sur. Co. v. Arc Materials*, 878 F.2d 385 (9th Cir. 1989)).

The First Specialty policies at issue in the *Paradise Court* and *Wigwam Ranch* cases included the following Prior Completed Work Exclusion and Condominium Exclusions:

[**Prior Completed Work Exclusion:**]

This insurance does not apply to

. . . "Bodily injury," "property damage," or "personal and advertising injury" arising out of your work that,

a. is completed prior to the date shown in the schedule of this endorsement; or

b. is abandoned by the insured prior to the date reflected in the schedule of this endorsement.

. . . .

3

[**Condominium Exclusion:**]

This policy does not apply to "property damage", "bodily injury", or "personal and advertising injury" arising out of, or related in any way to "your work" or "your product" within the "products-completed operation hazard" when "your work" or "your product" are part of or incorporated into the following:

a. a condominium or condominium project; or

b. a townhouse or townhouse project.

This endorsement does not apply if "your work" occurs or "your project" is supplied or incorporated after such condominium or townhouse was certified for occupancy, except if "your work" or "your product" is performed or installed after the certificate of occupancy is effective in order to repair or replace "your work" or "your product" that was completed or incorporated prior to the effective date of the certificate of occupancy.

IUMF 47.

Though the parties pointed to other provisions of the First Specialty policies at hearing, the court only addresses those that were raised in the parties' briefing.[1]

As to each of the six underlying actions, Interstate Fire moves for summary judgment on its declaratory relief claims that (1) First Specialty owed a duty to defend the insured and/or[2] (2) First Specialty owed the insured a duty to indemnify the insured.  Interstate further claims First Specialty is liable for equitable contribution for the amount Interstate paid for defense costs and indemnification upon settlement in each of the underlying cases.  *See* Interstate MSJ at 2.  First Specialty opposes, FS Opp'n, ECF No. 46, and Interstate filed a reply, Interstate Reply, ECF No. 51.  First Specialty also moves for summary judgment on Interstate's duty to defend and duty to indemnify declaratory relief claims in the six underlying actions.  First

/////

---

[1] To the extent any party raised contract provisions as relevant for the first time at hearing, the parties did not fully develop these arguments and the court does not analyze them here.

[2] As to *Allred* and *Ceccarelli*, Interstate only claims First Specialty had a duty to indemnify, and as to *Baker*, Interstate only claims First Specialty had a duty to defend.  *See generally* Interstate MSJ.

4

1    Specialty Mot. for Summ. J. ("FS MSJ"), ECF No. 43.  Interstate Fire opposes, Interstate Opp'n,

2    ECF No. 47, and First Specialty filed a reply, FS Reply, ECF No. 50.

3                     The court heard oral argument on both motions on July 17, 2019, and resolves

4    them here.

5    II.       INTERSTATE'S REQUEST FOR JUDICIAL NOTICE

6                     In conjunction with its motion for summary judgment, Interstate also filed a

7    request for judicial notice of the following documents filed in the underlying cases: the complaint

8    filed in *Allred*, Req. for Judicial Not., ECF No. 42, Ex. 1; the amended complaint and amended

9    third-party complaint filed in *Alstatt*, *id.*, Exs. 2–3; the first amended complaint and cross-

10   complaint filed in *Baker*, *id.*, Exs. 4–5; the complaint and Centex Homes' answer to the first

11   amended complaint and third-party complaint, filed in *Ceccarelli*, *id.*, Exs. 6–7; the complaint

12   and third-party complaint filed in *Paradise Court*, *id.*, Ex. 8–9; and the complaint and D.R.

13   Horton's answer to the complaint and third-party complaint filed in *Wigwam Ranch*, *id*. Exs. 10–

14   11.  First Specialty does not oppose this request.  Each document covered by Interstate's request

15   is a court document and a matter of public record subject to ready determination of its accuracy.

16   *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

17   Accordingly, the request for judicial notice is GRANTED, with the limitation that the judicially

18   noticed fact in each instance is the existence of a document, not the truth of the matters asserted in

19   the documents.  *See Rowland v. Paris Las Vegas*, No. 3:13–CV–02630, 2014 WL 769393, at *3

20   (S.D. Cal. Feb. 25, 2014).

21   III.      LEGAL STANDARD

22                    A court will grant summary judgment "if . . . there is no genuine dispute as to any

23   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

24   The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

25   resolved only by a finder of fact because they may reasonably be resolved in favor of either

26   party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

27                    As a general matter, the moving party bears the initial burden of showing the

28   district court "that there is an absence of evidence to support the nonmoving party's case."

5

1    *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving

2    party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec.*

3    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both

4    parties must "cit[e] to particular parts of materials in the record . . . ; or show[] that the materials

5    cited do not establish the absence or presence of a genuine dispute, or that an adverse party

6    cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also*

7    *Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there

8    is some metaphysical doubt as to the material facts.").  Moreover, "the requirement is that there

9    be no *genuine* issue of *material* fact . . . .  Only disputes over facts that might affect the outcome

10   of the suit under the governing law will properly preclude the entry of summary judgment."

11   *Anderson*, 477 U.S. at 247–48 (emphasis in original).

12          In deciding a motion for summary judgment, the court draws all inferences and

13   views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

14   587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a

15   whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

16   issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv.*

17   *Co.*, 391 U.S. 253, 289 (1968)).  Where a genuine dispute exists, the court draws inferences in the

18   plaintiff's favor.  *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).

19          The Supreme Court has taken care to note that district courts should act "with

20   caution in granting summary judgment," and have authority to "deny summary judgment in a case

21   where there is reason to believe that the better course would be to proceed to a full trial."

22   *Anderson*, 477 U.S. at 255.  A trial may be necessary "if the judge has doubt as to the wisdom of

23   terminating the case before trial."  *Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500,

24   1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)).  This may

25   be the case "even in the absence of a factual dispute."  *Rheumatology Diagnostics Lab., Inc v.*

26   *Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22

27   F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

28   /////

IV.     ANALYSIS

       A.      Declaratory Relief Claims

              Interstate claims First Specialty had both a duty to defend and/or a duty to indemnify their mutual insureds in the underlying cases.  Because these are two separate duties with different legal requirements, *see Century Sur. Co. v. Andrew*, 134 Nev. 819, 823 (2018), the court addresses the claims regarding First Specialty's duty to defend first, followed by the claims regarding its duty to indemnify.

              1.      Duty to Defend

                     a.      Applicable Law

              As to the duty to defend claims, the parties agree, as confirmed at hearing, that the court should apply the substantive law of the state in which each of the underlying cases occurred. *See Vacation Village, Inc. v. Clark County, Nev.*, 497 F.3d 902, 913 (9th Cir. 2007) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).  Accordingly, the court need not engage in a choice of law determination as to the Nevada cases.  *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1080 (C.D. Cal. 2010) ("Because the parties agree that the home state's laws should be applied to those Plaintiffs who filed in states other than California, the Court need not make a choice of law determination as to those plaintiffs.").  To the extent there is any difference in the states' laws regarding the duty to defend, the court will apply Nevada law to the three duty-to-defend claims arising out of Nevada cases (*Alstatt*, *Paradise Court,* and *Wigwam*), and California law to the one claim arising out of a California case (*Baker*).

              Under both California and Nevada law, "[a]n insurer must defend its insured against claims that create a *potential* for indemnity under the policy."  *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 654 (2005) (citations omitted) (emphasis in original); *see also United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 687 (2004) ("[A]n insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." (quoting *Gray v. Zurich Insurance Company*, 65 Cal. 2d 263 (1966))).  In both jurisdictions, the determination of whether the insurer owes a duty to defend is initially made "by comparing the allegations of the complaint with the terms of the policy."  *Montrose Chem. Corp.*

7

1  *v. Superior Court*, 6 Cal. 4th 287, 295 (1993) (citation omitted); *see also United Nat'l Ins. Co.*,

2  120 Nev. at 687 (same).

3             In California, extrinsic evidence may also be considered to determine whether

4  there is a potential for liability under the policy, and therefore a duty to defend.  *See MV*

5  *Transportation*, 36 Cal. 4th at 655.  In a relatively recent case, *Century Surety Co. v. Andrew*,

6  134 Nev. 819 (2018), Nevada's Supreme Court took a different approach from California, and

7  held "as a general rule, facts outside of the complaint cannot justify an insurer's refusal to defend

8  its insured."  *Id.* 822 n.4  (citing Restatement of Liability Insurance § 13 cmt. c (Am. Law Inst.,

9  Proposed Final Draft No. 2, 2018) ("The general rule is that insurers may not use facts outside the

10  complaint as the basis for refusing to defend . . . .")[3]).  Thus, California allows consideration of

11  extrinsic evidence in determining duty to defend, whereas Nevada generally does not.

12                           b.     Nevada Cases

13                                 i.     Nevada's Four Corners Rule

14             Interstate argues that the court should not consider First Specialty's evidence

15  regarding its duty to defend in the underlying Nevada cases, because *Century Surety Co. v.*

16  *Andrew* announced a clear rule limiting the analysis to the "four corners" of the complaint and the

17  /////

18  /////

---

19             [3] The current edition of the Restatement, updated in 2019, adopts this language:

20                    The general rule is that insurers may not use facts outside the
21             complaint as the basis for refusing to defend, with the result that even
             an insurer with a strong factual basis for contesting coverage must
22             defend under a reservation of rights and then file a declaratory-
             judgment action to terminate the duty to defend.  Only in a
23             declaratory-judgment action filed while the insurer is defending, or
             in a coverage action that takes place after the insurer has fulfilled the
24             duty to defend, may the insurer use facts outside the complaint as the
             basis for avoiding coverage.

25
26  Restatement of the Law of Liability Insurance § 13 cmt. c (2019).  The updated Restatement also
   acknowledges "it is anticipated that courts will consider additional exceptions through a common-
27  law process of reasoning by analogy."  *Id.* cmt. a.

28

1   policy at issue.[4]  Interstate Mot. at 23; *see also United Nat'l Ins. Co. v. Frontier Ins. Co.*,

2   120 Nev. 678, 681 (Nev. 2004) ("We also conclude that the duty to defend arises when there is a

3   potential for coverage based on the allegations in a complaint."); *but see Maryland Cas. Co. v.*

4   *Am. Safety Indem. Co.*, No. 2:10-CV-02001-MMD, 2013 WL 1007707, at *5 (D. Nev. Mar. 12,

5   2013) (without citing to any Nevada precedent, opining that "[u]nder the Nevada standard for

6   duty to defend, Defendant would need to set forth specific facts either indicating that coverage

7   was impossible, or tending to establish that the property damage occurred outside the policy

8   period.").

9           First, First Specialty urges the court to read into *Century Surety*'s holding some

10  common exceptions, such as allowing consideration of facts outside the complaint "when they go

11  solely to an issue of coverage that does not overlap with the merits of, or relate to the truth or

12  falsity of any factual allegations in, the action against the insured."  FS MSJ at 9.  First Specialty

13  points to several other jurisdictions who have adopted the "four-corners" rule that have also

14  adopted such an exception.  *Id.* (citing *Pompa v. Am. Family Mutual Ins. Co.* 520 F.3d 1139, 1147

15  (10th Cir. 2008) (applying Colorado law); *Julio & Sons Co. v. Travelers Cas. & Sur. Co.*

16  591 F. Supp. 2d 651, 658–659 (S.D.N.Y. 2008) (applying Texas law); *Blake v. Nationwide Ins.*

17  *Co.* 904 A.2d 1071, 1076 (Vt. 2006); *Nationwide Mut. Fire Ins. Co. v. Keen* 658 So.2d 1101,

18  1102–03 (Fla. App. 1995)).

19          However, rather than presume the Nevada Supreme Court would create an

20  exception were it given an opportunity, this court is inclined to follow its sister courts in taking

21  the Nevada Court's holding at face value.  *See OneBeacon Ins. Co. v. Probuilders Specialty Ins.*

22  *Co.*, No. 3:09-CV-36-ECR-RAM, 2009 WL 2407705, at *8 (D. Nev. Aug. 3, 2009) ("Nevada has

23  adopted the 'complaint rule,' pursuant to which an insurer that seeks to avoid its duty to defend

24  _____

25          [4] To be clear, the court in *Century Surety* also clarified that "facts outside the complaint
    may be used in an action brought by the insurer seeking to *terminate* its duty to defend its insured
26  in an action whereby the insurer is defending under a reservation of rights."  *Century Sur. Co.*,
    134 Nev. at 822 n.4 (emphasis added) (citing Restatement of Liability Insurance § 13 cmt. c (Am.
27  Law Inst., Proposed Final Draft No. 2, 2018) ("Only in a declaratory-judgment action filed while
    the insurer is defending, or in a coverage action that takes place after the insurer fulfilled the duty
28  to defend, may the insurer use facts outside the complaint as the basis for avoiding coverage.")).

1    its insured may only do so by comparison of the complaint in the underlying litigation to the

2    terms of the policy." (citing *United Nat'l Ins. Co.*, 120 Nev. at 686)); *Beazley Ins. Co. v. Am.*

3    *Econ. Ins. Co.*, No. 2:12-CV-01720-JCM, 2013 WL 2245901, at *4 (D. Nev. May 21, 2013);

4    *Liberty Ins. Underwriters Inc. v. Scudier*, 53 F. Supp. 3d 1308, 1315 (D. Nev. 2013); *see also*

5    *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 884 n.7 (9th Cir. 2000) (directing, in

6    absence of precedent from the state Supreme Court, the court "must make a reasonable

7    determination of the result the highest state court would reach if it were deciding the case").

8    Accordingly, the court limits its examination to the four corners of the relevant complaint and the

9    CGL policy in the underlying cases to determine whether First Specialty owed the insured a duty

10   to defend.

11          Second, First Specialty argues the *Century Surety* decision should not be applied

12   retroactively.  FS Reply at 14.  "Although not constitutionally mandated, retroactive application

13   of judicial decisions is the rule and not the exception" in civil cases.  *Coopers & Lybrand v. Sun-*

14   *Diamond Growers of CA*, 912 F.2d 1135, 1138 (9th Cir. 1990) (internal quotation marks omitted)

15   (quoting *United States v. Gonzalez–Sandoval*, 894 F.2d 1043, 1052 (9th Cir. 1990)).  First

16   Specialty has not shown why the court should make an exception to this rule here, arguing only

17   that "it would be inequitable to retroactively apply this ruling,"  FS Reply at 14.  *See Coopers &*

18   *Lybrand*, 912 F.2d at 1138 (listing factors to consider).  Moreover, at least one federal district

19   court recognized Nevada as having adopted a "four-corners" or "complaint" rule as early as 2009,

20   many years before Interstate filed this case and before many of the underlying cases were filed.

21   *See OneBeacon Ins. Co.*, 2009 WL 2407705, at *8 (D. Nev. Aug. 3, 2009) (citing *United Nat'l*

22   *Ins. Co.*, 120 Nev. at 686).  Accordingly, the court applies the four corners rule to the underlying

23   Nevada cases.

24                            ii.      *Alstatt*

25          In *Alstatt*, Carl and Terry Alstatt and other homeowners in Clark County, Nevada,

26   sued Centex Homes, alleging property damage related to construction defects caused by

27   contractors hired by Centex Homes.  *Alstatt* Compl., ECF No. 42-2; IUMF 7.  Centex Homes

28   filed a cross-complaint for indemnity from the contractors, including Interstate's and First

                                          10

1    Specialty's mutual insured, MS Concrete.  Centex Cross Compl., ECF No. 42-3; IUMF 8.

2    Neither dates of work performed nor dates of incidents of damage are alleged in the complaint or

3    cross-complaint.  *Alstatt* Compl., ECF NO. 42-2; Centex Cross Compl., ECF No. 42-3; IUMF 9

4    (disputed).  First Specialty declined to defend or indemnify MS Concrete in connection with the

5    *Alstatt* case based on its conclusion there was no potential for the "property damage" alleged in

6    the complaint to have occurred during First Specialty's policy period, April 15, 2004 through

7    April 15, 2005, and the Prior Completed Work Exclusion Applied.  Nelson Decl., Ex. L (First

8    Specialty Declination Letter), ECF No. 41-12; *id.* Ex. M (First Specialty Policy), ECF No. 41-13;

9    IUMF 10; FSUMF 64.  In so concluding, First Specialty relied on a homeowners' matrix showing

10   the close of escrow dates for the homes in question occurred roughly three months after the

11   policy's expiration.  Nelson Decl., Ex. L; IUMF No. 11 (disputed).

12           For the court to grant summary judgment on Interstate's duty to defend claim in

13   *Alstatt*, Interstate has the burden to show that First Specialty's policy could have potentially

14   covered MS Concrete's liability in *Alstatt.  See Safeco Ins. Co. v. Sup. Ct. (Century Sur. Co.)*,

15   140 Cal. App. 4th 874, 879 (2006) ("[I]n an action for equitable contribution by a settling insurer

16   against a nonparticipating insurer, the settling insurer has met its burden of proof when it makes a

17   prima facie showing of coverage under the nonparticipating insurer's policy—the same showing

18   of potential coverage necessary to trigger the nonparticipating insurer's duty to defend . . . .").

19   MS Concrete's two CGL policies issued by First Specialty covered damages from "property

20   damage" caused by an "occurrence" during the policy period.  *See* Nelson Decl., Ex. M at 16.  As

21   noted above, "Property damage" is defined as:

22           a. Physical injury to tangible property, including all resulting loss of
             use of that property. All such loss of use shall be deemed to occur at
23           the time of the physical injury that caused it; or

24           b. Loss of use of tangible property that is not physically injured. All
             such loss of use shall be deemed to occur at the time of the
25           "occurrence" that caused it.
26

27   /////

28

IUMF 46.  An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id.*  Also as noted above, the policies also contained the following Prior Completed Work Exclusion:

> This insurance does not apply to
>
> . . . "Bodily injury," "property damage," or "personal and advertising injury" airing out of your work that,
>
> a. is completed prior to the date shown in the schedule of this endorsement; or
>
> b. is abandoned by the insured prior to the date reflected in the schedule of this endorsement.

IUMF 47.  The first of MS Concrete's policies covered the time period April 15, 2004 to April 15, 2005, and the second covered April 15, 2008 to April 15, 2009.  FSUMF 47–48.

The third-party complaint filed against MS Concrete and others alleges, "While working at the site, Third-Party Defendants, . . . caused damages to Plaintiffs as alleged in Plaintiff's Amended Complaint.," and "Plaintiffs' Amended Complaint alleges that defects exist which relate to each of the Third-Party Defendants' respective scopes of work at the Subject Properties."  Centex Cross Compl., ECF No. 42-3, at 10.  The *Alstatt* plaintiffs' amended complaint against Centex Homes alleges construction defects caused by Centex and its subcontractors, and "damages, including new damages, are occurring, continuing to occur, ongoing progressive and worsening as time continues to pass."  *Alstatt* Compl., ECF No. 42-2, at 17.

Interstate argues the complaint in *Alstatt* created the potential that MS Concrete would be liable for damages, and that liability would be covered by First Specialty's CGL policy.  First Specialty's position is that the homes at issue in the underlying case "were completed during the three-year gap between the two First Specialty policy periods," so none of the alleged "property damage" could have occurred during the first policy period, and the Prior Completed Work Exclusion precluded coverage under the later policy.  FS MSJ at 7.  Because Nevada follows the four-corners rule, First Specialty's duty to defend is determined only by looking at the

1   complaint and First Specialty's policy. *See Century Surety Co.*, 134 Nev. at 822 n.4.  As

2   explained above, neither the homeowners' complaint nor Centex's cross-complaint provides

3   specific dates on which the damage allegedly occurred, so First Specialty's argument is

4   unavailing. *See Alstatt* Compl., ECF No. 42-2[5]; Centex Cross-Compl., ECF No. 42-3; IUMF 8–9

5   (disputed).  The complaint and cross-complaint create the potential for a covered claim under one

6   of First Specialty's policies, because, together, they allege that property damage occurred as a

7   result of MS Concrete's work on the development at issue.  Therefore, First Specialty had the

8   duty to defend MS Concrete in the *Alstatt* action under at least one of its policies. *See Assurance*

9   *Co. of Am. v. Ironshore Specialty Ins. Co.*, No. 2:13-CV-2191-GMN-CWH, 2015 WL 4579983,

10  at *7 (D. Nev. July 29, 2015) (finding duty to indemnify where complaint lacked "specific

11  reference to when the alleged property damage arose").

12          Furthermore, even if MS Concrete's work had concluded during the three-year gap

13  between policies, this would not rule out the possibility that the "occurrence" of "property

14  damage" took place before the first policy concluded in April 2005 but was only discovered after

15  the policy expired.  As the District Court of Nevada explained when applying Nevada law to a

16  nearly identical policy, "the date on which a homeowner discovers the damage does not

17  necessarily correlate with the date on which the damage occurred.  Under [the policy], the duty to

18  defend is triggered by the occurrence of property damage, not the discovery of property damage."

19  *Nat'l Fire & Marine Ins. Co. v. Redland Ins. Co*., No. 3:13-CV-00144-LRH, 2014 WL 3845153,

20  at *5 (D. Nev. Aug. 5, 2014).  Furthermore, the fact that the plaintiffs in the underlying action did

21  not own the homes in question until after the first policy expired does not necessarily mean the

22  insured subcontractor could not be liable to the homeowners for work that caused damage during

23  the policy period. *See McMillin Mgmt. Servs.*, *L.P. v. Fin. Pac. Ins. Co.*, 17 Cal. App. 5th 187,

24  192 (Ct. App. 2017).  In other words, even if the court considered them, the close of escrow dates

25  First Specialty relies on are not dispositive of First Specialty's duty to defend.

26  _____

27          [5] Plaintiffs state they initially became aware of certain defects "within the last year," and
    the complaint was filed in 2014." *Alstatt* Compl., ECF No. 42-2, at 18.  However, the date of

28  discovery is not dispositive in determining coverage, as explained above.

1    First Specialty's motion for summary judgment on Interstate's declaratory relief

2    claim is DENIED as to First Specialty's duty to defend in *Alstatt*.  Interstate's motion for

3    summary judgment of the same is GRANTED.

4    iii.    *Wigwam Ranch*

5    In *Wigwam Ranch*, the Wigwam Ranch East Twilight Home-Owners Association

6    served on the developer, D.R. Horton, a Chapter 40 Notice of Construction Defect,[6] and later a

7    formal complaint in Clark County District Court of Nevada, alleging "property damage" arising

8    from construction defects.  Nelson Decl., Ex. NN (Chapter 40 Notice), ECF No. 41-40; *Wigwam*

9    *Ranch* Compl. ¶¶ 32–39 (alleging "latent deficiencies" caused by developers due to, *inter alia*,

10   faulty repairs), ECF No. 42-10; *see also* D.R. Horton Cross Compl., ECF No. 42-11.  D.R.

11   Horton then provided notice of the claim to the relevant contractors, including Sunstate, an

12   Interstate and First Specialty mutual insured, which performed landscaping and flat work.  Nelson

13   Decl., Ex. OO (Notice to Sunstate), ECF No. 41-41; IUMF 38.  Again, the complaint and the

14   cross-complaint did not include precise dates of work or incidents of damage.  *Wigwam Ranch*

15   Compl., ECF No. 42-10, at 12 ("Within the past five years, Plaintiff discovered that the

16   Community was experiencing defective conditions . . . .");[7] D.R. Horton Cross Compl., ECF No.

17   42-11; IUMF 39 (disputed).

18   First Specialty declined to defend or indemnify D.R. Horton, citing, among other

19   things, the Prior Completed Work Exclusion, on the basis that all work was completed before the

20   commencement of either of D.R. Horton's two year-long First Specialty policies, covering July

21   20, 2008, through July 20, 2010 continuously.  Nelson Decl., Ex. RR (*Wigwam Ranch* First

22   Specialty Declination Letter), ECF No. 41-44; *id.* Ex. II (First Specialty Policy), ECF No. 41-35;

---

23   [6] A "Chapter 40 Notice" is a notice of construction defects created by Nevada Revised

24   Statutes § 40.649.  The statute encourages informal resolution of homeowner complaints
     regarding construction defects by requiring homeowners to send a Chapter 40 Notice to their

25   contractor(s) before filing a lawsuit, to give the contractors an opportunity to inspect and repair
     defects.  *See Cincinnati Ins. Co. v. AMSCO Windows*, 921 F. Supp. 2d 1226, 1239 (D. Utah

26   2013), *supplemented*, No. 2:10-CV-00542-BSJ, 2013 WL 12141330 (D. Utah Sept. 23, 2013).

27   [7] Because the complaint was filed in 2014, this range is not dispositive of the coverage

28   issue here, given the dates of the policy.

14

1    IUMF 40–41 (disputed).  In so concluding, First Specialty relied on communications with

2    Sunstate's counsel, retained by Interstate.  FSUMF 44–46.

3              Here, as in *Alstatt*, the complaint and cross-complaint together allege "property

4    damage" caused by D.R. Horton's work on the homeowner-plaintiffs' properties.  *See Wigwam*

5    *Ranch* Compl., ECF No. 42-10; D.R. Horton Cross-Compl., ECF No. 42-11.  The homeowners'

6    association's complaint against D.R. Horton states the plaintiffs are "unaware of when all of the

7    defective conditions alleged first occurred or manifested themselves or caused physical injury to

8    or destruction of tangible property . . . but asserts that the construction deficiencies . . . have

9    developed and occurred over a number of years since substantial completion of the Community,

10   said deficiencies and resulting physical injuries being continuous and progressive." *Wigwam*

11   *Ranch* Compl. ¶ 23, ECF No. 42-11.  The complaint also alleges that D.R. Horton made "certain

12   repairs" to the properties "since the original construction of the Community and for a period of

13   several years thereafter." *Id.* ¶ 24.  D.R. Horton's cross-complaint alleges Sunstate, among

14   others, performed negligent work, which partly caused the damage at issue in the homeowners'

15   complaint.  D.R. Horton Cross-Compl., ECF No. 42-11, ¶¶ 12–17.  First Specialty concedes that

16   "nothing in the pleadings indicated when the project at issue was completed."  FS Opp'n at 20.

17   Based on these facts alone, First Specialty had a duty to defend Sunstate in the *Wigwam Ranch*

18   case under Nevada law.  *See Century Surety Co.*, 134 Nev. at 822 n.4.

19             First Specialty's motion for summary judgment on Interstate's duty to defend

20   claim is DENIED as to *Wigwam Ranch,* and Interstate's motion for summary judgment is

21   GRANTED as to First Specialty's duty to defend in *Wigwam Ranch*.

                              iv.      *Paradise Court*
22

23             On October 23, 2007, Paradise Court Home-Owners Association filed a Chapter

24   40 Notice of Construction Defect against D.R. Horton, alleging property damage related to

25   construction defects caused by contractors hired by D.R. Horton.  Nelson Decl., Ex. DD (Chapter

26   40 Notice), ECF No. 41-30; IUMF 30.  The association then filed a formal complaint against D.R.

27   Horton in Nevada state court, with similar allegations. *Paradise Court* Compl. ¶¶ 3, 11, ECF No.

28   42-8.  D.R. Horton filed a third-party complaint for indemnity from various contractors, including

                                        15

the mutual assured of Interstate and First Specialty, Sunstate, which performed landscaping and flatwork.  D.R. Horton Compl., ECF No. 42-9; IUMF 31; FSUMF 35.  Neither the third-party complaint nor the homeowners' complaint contained precise dates of work performed or dates of incidents of damage in the text of the pleading itself.  *See* D.R. Horton Compl., ECF No. 42-9; *Paradise Court* Compl., ECF No. 42-8 ("Within three years past [of 2009], Plaintiff discovered the [development] has been experiencing defective conditions . . . ."); IUMF No. 32 (disputed).  However, the homeowners' complaint attaches a homeowners' matrix showing the close of escrow dates for the homes in question, *Paradise Court* Compl., ECF No. 42-8, at 13–36, and a Chapter 40 Notice dated October 2007, *id.* at 37–45.

First Specialty declined to defend or indemnify D.R. Horton in connection with the *Paradise Court* case, citing the applicable policy's Condominium or Townhouse Exclusion.  Nelson Decl., Ex. HH (*Paradise Court* First Specialty Declination Letter), ECF No. 41-34.  First Specialty based this conclusion on correspondence with Sunstate's defense counsel, FSUMF 36, 38–40, and it appears undisputed that the case involved a townhouse project.  *See* FS MJS, Ex. GG (Barnes Dep.), at 53:8–11[8] (Interstate's Rule 30(b)(6) witness testifying that development in *Paradise Court* was townhouse project).  In its briefing, First Specialty also argues the Chapter 40 Notice "functions as the complaint" and shows that Sunstate's work must have been completed by October 2007, the date of the Notice.  Because First Specialty's policy only covers July 20, 2008, through July 29, 2010, First Specialty argues, the Prior Completed Work Exclusion applies.  *See* FS Opp'n at 24; FS MSJ at 21.

As in *Alstatt* and *Wigwam Ranch*, on the face of the homeowners' complaint and D.R. Horton's cross-complaint, First Specialty had a duty to defend Sunstate in *Paradise Court*, because the pleadings alleged property damage caused by Sunstate's work and did not specify precisely when the work was completed.  First Specialty's argument with respect to the Chapter 40 Notice of Defect hinges on the assumption that, "if the Association was initiating a construction defect action in October 2007," the date of the Notice, "the project was complete by

---

[8] All citations to deposition testimony refer to the deposition's internal pagination.

1    then.  And if the project was complete by October 2007, Sunstate's work must have been

2    completed by then as well."  FS MSJ at 21–22.  Because the Chapter 40 Notice of Defects is

3    attached to the homeowners' complaint, and is comparable to a pleading itself,[9] First Specialty

4    properly considered it in evaluating whether it had a duty to defend under Nevada law.  However,

5    nothing in the Notice of Defect implies that all the homes in the development were necessarily

6    finished at the time of the Notice.  The Chapter 40 Notice only includes a "preliminary list of

7    defects," *Paradise Court* Compl., ECF No. 42-8, at 38, and the homeowner complaint alleges

8    D.R. Horton "failed to adequately correct [the] property damage and deficiencies thereby

9    resulting in further property damages," and that the defects were attributable not only to the

10   original defective construction but also to "any repairs of the Association Development," *id.*

11   ¶¶ 17–19.  D.R. Horton's third-party complaint attempted to shift that claim to Sunstate and the

12   other subcontractors.  *See* D.R. Horton Compl. ¶ 11, ECF No. 42-9.  Therefore, the complaints

13   create the possibility that Sunstate conducted repairs on the properties and caused damages.  For

14   these reasons, the court cannot assume at this stage that all of Sunstate's work was necessarily

15   completed by the time the Chapter 40 Notice issued.

16           Furthermore, because First Specialty's determination that the Condominium

17   Exclusion applied to the *Paradise Court* case depended solely on extrinsic evidence of

18   communications with Interstate's counsel, and was not evident on the face of the complaint, First

19   Specialty's argument that it did not have a duty to defend based on the Condominium Exclusion

20   is unavailing.  That the fact is now undisputed does not change this analysis, especially given that

21   First Specialty has conceded only that the exclusion applies to completed condominium or

22   townhouse projects.  FS Opp'n at 19 n. 7.

23           First Specialty makes no argument regarding the homeowners' matrix attached to

24   the complaint, so the court does not analyze its effect here.

25   /////

26

---

27           [9] *See* Restatement of the Law of Liability Insurance § 13 (2019) ("For the purpose of
     determining whether an insurer must defend, the legal action is deemed to be based on . . . Any
28   allegation contained in the complaint or comparable document stating the legal action . . . .").

1    Accordingly, First Specialty's motion for summary judgment on Interstate's duty

2    to defend claim is DENIED as to *Paradise Court*, and Interstate's motion on the same

3    GRANTED.

4                        c.    California Case, *Baker v. Mello*

5    Next, the court turns to the only California case for which Interstate claims First

6    Specialty owed a duty to defend, *Baker v. Mello*.[10]  In *Baker*, Eddie and Donna Baker, along with

7    other homeowners, filed suit in Merced County Superior Court of California against Mello Ranch

8    130 LLC and Syncon Homes, alleging property damage related to construction defects.  *Baker*

9    Compl., ECF No. 42-4; IUMF 15; FSUMF 14.  Syncon Homes and Mello Ranch filed a cross-

10   complaint seeking indemnity from contractors that worked on the homes in question, including

11   the mutual assured of Interstate and First Specialty, Blue Mountain Air, which performed HVAC

12   and sheet metal work.  *See* Syncon Cross Compl., ECF No. 42-5; IUMF 16; FSUMF 16.  Neither

13   precise dates of work performed nor precise dates of incidents of damage are alleged in the

14   complaint or cross-complaint.  Syncon Cross Compl., ECF No. 42-5; Baker Compl., ECF No. 42-

15   4[11]; IUMF No. 17 (disputed).  First Specialty declined to defend or indemnify Blue Mountain Air

16   in the *Baker* case on the ground there were no allegations of "property damage" related to Blue

17   Mountain Air's HVAC work, and there was no potential the "property damage" occurred during

18   First Specialty's policy period, February 15, 2005 through May 25, 2005.  Nelson Decl., Ex. U

19   (*Baker* First Specialty Declination Letter), ECF No. 41-21; *id.* Ex. V (First Specialty Policy), ECF

20   No. 41-22; IUMF 18; FSUMF 23.  In support, First Specialty relied on a homeowners' matrix

21   showing the close of escrow dates for the homes in question were approximately five months

22   after the policy's expiration.  Nelson Decl., Ex. U (Baker First Specialty Declination Letter);

---

23          [10] For the other California case, *Allred*, Interstate is only claiming First Specialty owed a
24   duty to indemnify.

25

26          [11] The complaint states: "Within the last ten years, the [defendants] developed . . . the
     PROPERTY and/or otherwise participated in . . .. the projects where the PROPERTY is located,"
27   and "[a]t the time of purchase by Plaintiffs, the PROPERTY was defective . . ." but "[t]he defects
     alleged herein . . . were not apparent by reasonable inspection of the PROPERTY at the time of
28   the purchase.  The defects thereafter manifested."  *Baker* Compl., ECF No. 42-4, at 5–7.

1    IUMF No. 19 (disputed).  In its motion, First Specialty also offers evidence suggesting Blue

2    Mountain did not order materials for the HVAC work until after First Specialty's policy expired

3    on May 25, 2005.  FSUMF 20 (disputed).

4               Under California law, "[a]n insurer has a duty to defend an insured if it becomes

5    aware of, or if the third-party lawsuit pleads, facts giving rise to the potential for coverage under

6    the insuring agreement."  *Food Pro Int'l, Inc. v. Farmers Ins. Exch.,* 169 Cal. App. 4th 976, 985

7    (2008) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19, *as modified on denial of reh'g*,

8    (Cal. 1995)); *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (Cal. 1993)).  It is

9    undisputed that First Specialty was provided with various documents related to Interstate's claim,

10   including certain job file documents.  FSUMF 18.  First Specialty offers evidence from the job

11   file documents to show Blue Mountain did not order the HVAC materials in question until after

12   the expiration of First Specialty's policy on May 25, 2005, implying Blue Mountain's HVAC

13   work could not have occurred during the covered period.  *See* FS MSJ at 16; FSUMF 20

14   (disputed) (citing FS MSJ, Ex. R ("Job File Docs."), ECF No. 43-11, at 158–218[12]).  Interstate

15   disputes this fact, citing its own objections to the job file documents.  Interstate Opp'n to FSUMF

16   20, ECF No. 47-1, at 5.  However, in its objections to evidence, Interstate does not object to

17   Exhibit R, pages 158–218.  *See* Interstate Objs., ECF No. 47-2, at 2 (lodging an objection only to

18   pages 74–79).  The exhibit in question is the contract between contractor H&C of Northern

19   California, Inc. and subcontractor Blue Mountain Air, Inc. for the HVAC work in question.

20   Without any explanation supporting Interstate's objection, the court overrules it and considers

21   Ex. R, pages 158–218, as Blue Mountain's subcontractor agreement.

22               Though First Specialty claims that accounting records show the materials were not

23   ordered until after May 2005, it does not provide the court with the precise location of that

24   information, and the information is not readily apparent in the sixty-page contract.  What is

25   readily apparent is that the effective date of the contract is listed as March 2005, the contract was

26   not signed by the President of H&C Construction until June 1, 2006, after the expiration date of

27   _____

28   [12] These page numbers refer to the document's internal pagination.  All other citations are
     to the ECF pagination, except where noted.

1    the First Specialty Policy.  Job File Docs., ECF No. 43-11, at 158, 179.  These conflicting dates

2    are not enough to create a genuine dispute of material fact regarding whether Blue Mountain's

3    work occurred before the expiration of the policy in May 2005.

4            First Specialty's second argument is that the complaint against Blue Mountain did

5    not allege "property damage" within the meaning used in the policy, because it only alleged the

6    HVAC systems themselves were defective.  *See* FS MSJ at 16.  However, as Interstate counters,

7    the homeowners' complaint against Mello Ranch 130 alleged the "defects" caused by defendants'

8    work "have resulted in damage to the homes and their component parts."  *Baker* Compl. ¶ 45,

9    ECF No. 42-4; *see* Interstate Opp'n at 13.

10           The fact that Blue Mountain's contract was effective starting March 2005 and that

11   the complaint and third-party complaint in *Baker* allege property damage from Blue Mountain's

12   installation work raises the potential the claims in *Baker* would be covered under First Specialty's

13   policy.  First Specialty has not met its burden of showing there is no dispute of material fact that

14   the claims are not covered by First Specialty's policy.  Accordingly, First Specialty had a duty to

15   defend Blue Mountain in the *Baker* suit, and Interstate's motion for summary judgment on that

16   claim is GRANTED.  First Specialty's motion on the same is DENIED.

17                   d.      <u>Conclusion</u>

18           For the foregoing reasons, Interstate's motion for summary judgment of its

19   declaratory relief claims is GRANTED with respect to First Specialty's duty to defend in *Alstatt*,

20   *Baker*, *Paradise Court* and *Wigwam Ranch*, and First Specialty's motion for the same in its favor

21   is DENIED.

22                   2.      <u>Duty to Indemnify</u>

23           With respect to the law on an insurer's duty to indemnify, the parties have not

24   identified, nor has the court found, any relevant difference in the law of Nevada and the law of

25   California.  An insurer's duty to indemnify is narrower than the duty to defend, *see*

26   *Schimmelfennig v. State Farm Fire & Cas. Co.*, 60 F.3d 834 (9th Cir. 1995) (citation omitted),

27   because it only arises if the underlying claims are actually covered by the insurer's policy, *Safeco*

28   *Ins. Co. of America v. Superior Court,* 140 Cal. App. 4th 874, 879–81 (Cal. 2006); *see also*

                                                    20

1   *United Nat'l Ins. Co.,* 120 Nev. at 686.  Furthermore, the duty to indemnify arises "only after

2   damages are fixed in amount (e.g., by a settlement or judgment)."  *Travelers Indem. Co. of*

3   *Connecticut v. Walking U. Ranch, LLC*, No. 218CV02482 CAS PJW X, 2018 WL 3768421, at *8

4   (C.D. Cal. Aug. 6, 2018) (citing Cal. Practice Guide: Insurance Litigation ¶ 7:501 (The Rutter

5   Group 2015)); *see also United Nat'l Ins. Co.*, 120 Nev. at 686 ("The duty to indemnify arises

6   when an insured becomes legally obligated to pay damages in the underlying action that gives rise

7   to a claim under the policy." (internal quotation marks and citation omitted)).

8          "When a duty to defend is shown, nonparticipating coinsurers are presumptively

9   liable for both the costs of defense and settlement."  *Safeco Ins. Co. of America*, 140 Cal. App.

10  4th at 880–81; *see also Assurance Co. of Am. v. Ironshore Specialty Ins. Co.*, No. 2:13-CV-2191-

11  GMN-CWH, 2015 WL 4579983, at *9 (D. Nev. July 29, 2015) ("[I]n cases in which a

12  nonparticipating co-insurer is found to have had a duty to defend in an already settled action, the

13  insurer attempting to disclaim coverage bears the burden of proving the applicability of any

14  policy exclusions.").  "[W]here an insurer refuses to defend its insured against a covered claim,

15  and the insured then settles the underlying action, the settlement 'becomes presumptive evidence

16  of the [insured's] liability and the amount thereof, which presumption is subject to being

17  overcome by proof.'"  *Am. Cas. Co. v. Int'l Creative Mgmt., Inc.*, No. CV 09-6321 PA (PJWX),

18  2010 WL 11519591, at *4 (C.D. Cal. Sept. 10, 2010) (internal quotations and citations omitted);

19  *Assurance Co. of Am.*, 2015 WL 4579983, at *9 (analyzing insurance dispute over Nevada

20  construction defect claims and noting "[i]f an insurer wrongfully denies coverage or refuses to

21  provide a defense, the insured is free to negotiate a settlement with the plaintiff, and that

22  settlement creates an evidentiary presumption of liability and damages for purposes of a

23  subsequent suit against the insurer" (quoting *Tilden–Coil Constructors, Inc. v. Landmark Am. Ins.*

24  *Co.*, 721 F. Supp. 2d 1007, 1013 (W.D. Wash. 2010))).

25          Therefore, once Interstate has met its burden to show First Specialty's duty to

26  defend, "it has met its burden of proof—and the alleged absence of *actual* coverage under the

27  nonparticipating coinsurer's policy is a defense which [First Specialty] must raise and prove."

28  *Safeco Ins. Co. of America*, 140 Cal. App. 4th at 879 (emphasis in original); *see also Travelers*

1   *Prop. Cas. Co. of Am. v. Safeco Ins. Co. of Illinois*, 468 F. App'x 689, 691 (9th Cir. 2012) ("[t]he

2   nonparticipating insurer[] bore the ultimate burden of proving the absence of liability coverage

3   under its policies"); *Assurance Co. of Am.*, 2015 WL 4579983, at *9 (applying similar proposition

4   to Nevada case).

5           Interstate claims First Specialty had a duty to indemnify the companies' mutual

6   insureds in *Allred*, *Alstatt, Ceccarelli*, *Paradise Court* and *Wigwam Ranch*.  As described above,

7   Interstate has met its burden of showing First Specialty had a duty to defend for *Alstatt, Paradise*

8   *Court* and *Wigwam Ranch*, and the court explains below why the burden on duty to defend has

9   been met in *Allred* and *Ceccarelli*.  For the purpose of Interstate's motion for summary judgment

10  on the duty to indemnify, the question is whether First Specialty has met its burden to show there

11  is a triable issue of fact regarding whether the claims are actually covered.  *See Safeco Ins. Co. of*

12  *America*, 140 Cal. App. 4th at 881; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250.  For the

13  purpose of First Specialty's motion for summary judgment, the question is whether First

14  Specialty has shown there is no dispute of material fact that the underlying claims are not covered

15  by its policies.  *Id.*

16                          a.          Close of Escrow Dates

17          First, the court addresses an issue common to several of the underlying cases.  In

18  *Allred*, *Alstatt, Baker* and *Ceccarelli*, First Specialty relies on close of escrow dates, reflected in

19  homeowner's matrices, to show the "property damage" or work performed occurred outside the

20  policies' coverage periods.  FSUMF 5 (citing FS MSJ., Ex. N (*Allred* Homeowner Matrix), ECF

21  No. 43-10; FSUMF 64 (citing FS MSJ, Ex. L, ECF No. 43-9, at 114–128[13] (*Alstatt* declination

22  letter citing close of escrow dates from homeowner matrix)); FSUMF 22 (citing FS MSJ, Ex. R,

23  ECF No. 43-11, at 77–79[14] (*Baker* Homeowner Matrix)); FSUMF 53–56 (citing FS MSJ, Ex. CC

24  (*Ceccarelli* Homeowner's Matrix), ECF No. 43-12, at 178–80).

25          Interstate argues the homeowner's matrices are not admissible, based on the Best

26  Evidence rule, hearsay, and because they lack foundation.  Interstate's Objs. to Evidence, ECF

27          _____

            [13] Citation is to internal pagination.

28          [14] Citation is to internal pagination.

No. 47-2 (objecting to, among others, FS MSJ Exs. N and CC).  On summary judgment, a court may only consider evidence that would be "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  But the evidentiary standard for admission at the summary judgment stage is lenient: A court may evaluate evidence in an inadmissible form if the evidentiary objections could be cured at trial.  *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006).  In other words, admissibility at trial depends not on the form of the evidence, but on its content.  *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).  If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 385–86.  However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).  First Specialty argues the exhibits are from First Specialty's claim files, and are not offered for the truth of the content, but to show what information was provided to First Specialty when it declined coverage.  FS Reply at 5–6.  Furthermore, it says Interstate provided the documents to First Specialty by Interstate, and therefore they qualify as admissions by Interstate, and so are not barred by the rule against hearsay.  *Id.* With this clarification, Interstate's objection is OVERRULED, but the court considers the evidence only for the purpose of showing what information First Specialty was provided, which is not dispositive of whether First Specialty actually had a duty to indemnify.

Even if the court were to consider their contents, the homeowner's matrices are not sufficient to raise a genuine issue of material fact as to the timing of "property damage," because, as a general rule, the "occurrence" of property damage from construction work under CGL policies such as those here "is not the time the wrongful act (such as performing defective work) was committed, but the time the property damage actually resulted[.]"  Insurance Coverage of

Construction Disputes (ICCDS) § 6:46 (2d ed. 2020) (for CGL policies that cover claims only if the "property damage occurs during the policy period," the time of performance is irrelevant, unless that performance immediately caused property damage in question). Therefore, the "property damage" could theoretically occur during construction of the home, or after completion of the home but before close of escrow, or even after close of escrow. *See Pepperell v. Scottsdale Ins. Co.*, 62 Cal. App. 4th 1045, 1051–52 (Cal. 1998) (finding, in case involving "standard occurrence-based CGL policy," and allegations of construction defects and continuing damage caused by defects, "continuous injury" trigger of coverage applied, and effect of accident or occurrence triggers coverage, not timing of accident or date of discovery); *Maryland Cas. Co. v. Am. Safety Indem. Co.*, No. 2:10-CV-02001-MMD, 2013 WL 1007707, at *3 (D. Nev. Mar. 12, 2013) ("Under Nevada law, the timing of an 'occurrence' in CGL insurance policies has generally been construed as the time of the property's physical alteration, not the insured's negligence."); *Garriott Crop Dusting Co. v. Superior Court,* 221 Cal App 3d 787 (1990) (finding "occurrence" of property damage unrelated to date third-party complainant purchased relevant property); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."). The court addresses each case in more detail below.

b.   *Allred*

Interstate has met its burden of showing the potential for coverage of the *Allred* claims; First Specialty has not met its burden of showing there is a triable issue of fact regarding whether the claims in *Allred* are covered by its policies. Because the burden is on First Specialty to show the claims are not covered by the policy of the insured, Charles Wheeler, First Specialty's motion for summary judgment must be denied, and Interstate's motion must be granted. The complaint filed in Merced County Superior Court alleged property damage resulting from Ranchwood Homes Corporations' work on the homes at issue. IUMF 1 (citing *Allred* Compl., ECF No. 42-1). The cross-complaint and subsequent correspondence with Ranchwood show Ranchwood sued mutual insured Mr. Wheeler for property damage arising out of his fencing work at the development, though dates of the work were not alleged in the complaint or

24

1    cross-complaint.  IUMF 2, 3 (citing *Allred* Compl., ECF No. 42-1[15]; Nelson Decl., Ex. B

2    (Ranchwood Correspondence to Interstate re: C. Wheeler)) (disputed).

3           In denying its duty to indemnify Wheeler, First Specialty relied on close of escrow

4    dates to show the homes the insured worked on were completed after the policy expired, so the

5    "property damage" could not have occurred during the policy period.  FSUMF 1, 6, 9 (disputed).

6    Even if the court considered the close of escrow dates as evidence, they do not create a genuine

7    dispute of material fact as to coverage as explained above.

8           First Specialty's only other argument is that the insured was responsible only for

9    fencing work, which was not mentioned in the complaint.  *See* FS MSJ at 13.  This, too, does not

10   create a material issue of fact, as it is merely pointing out a lack of specificity in the complaint.

11          First Specialty has not offered sufficient evidence to raise a triable issue of fact.

12   *Matsushita*, 475 U.S. at 586.  Interstate has sufficiently shifted the burden on summary judgment

13   to First Specialty and shown First Specialty cannot meet its burden.  Therefore, Interstate's

14   motion for summary judgment on the duty to indemnify in *Allred* is GRANTED and First

15   Specialty's motion is DENIED as to the same.

16                            c.      *Alstatt*

17          Similarly, Interstate has met its burden of showing the potential for coverage of the

18   *Alstatt* claims; First Specialty has not met its burden of showing there is a triable issue of fact

19   regarding whether the claims in *Alstatt* are covered by its policies.  Because the burden is on First

20   Specialty to show the claims are not covered by the policy of the insured, Centex Homes, First

21   Specialty's motion for summary judgment must be denied, and Interstate's motion must be

22   granted.

23          In *Alstatt*, First Specialty denied coverage on the basis that the homes at issue were

24   completed during the gap between the two First Specialty policy periods, so none of the "property

25   damage" could have occurred during the first policy period, and the Prior Completed Work

26   _____

27          [15] The complaint states, "At the time of the purchase by Plaintiffs, the PROPERTY was
     defective . . ." but goes on to explain "consequential damage" and defects that "were not apparent
     by reasonable inspection of the PROPERTY at the time of the purchase.  The defects thereafter

28   manifested."  *Allred* Compl., ECF No. 42-1 at 8–10.

1    Exclusion precluded coverage in the second policy period.  *See* FS MSJ at 28.   Regardless of

2    whether the Prior Completed Work Exclusion may have applied in the second policy, First

3    Specialty has not raised a triable fact regarding whether the claim was covered under the first

4    policy.  Again, First Specialty relies only on close-of-escrow dates to show the houses in question

5    were completed after July 2005, and therefore no property damage arising out of MS Concrete's

6    work could have occurred during the April 15, 2004 to 2005 policy period.  *Id.*  For the reasons

7    explained above, the close-of-escrow dates are not enough to raise a triable issue of fact regarding

8    when the property damage occurred, and First Specialty has therefore not met its burden so as to

9    survive summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250.

10                  First Specialty also cites "accounting records" that purportedly show MS Concrete

11   completed its work at the homes before September 23, 2005, which is before the second policy

12   went into effect on April 15, 2008.  FS MSJ at 28–29 (citing FSUMF 63); *see* FS MSJ, Ex. L,

13   ECF No. 43-9, at 24–29, 32–33[16] (table of contractor payments in *Alstatt* and table of plaintiff's

14   preliminary defect issues attributable to subcontractor MS Concrete), 82–113[17] (Centex Homes

15   Master Construction Agreement)); FSUMF 64 (citing FS MSJ, Ex. L, ECF No. 43-9, at 114–

16   128[18] (*Alstatt* First Specialty Declination Letter)).  Interstate objects to what appears to be the

17   relevant "accounting records," Ex. L, ECF No. 43-9, at 24–29, comprising a table of payments

18   apparently made to MS Concrete for work done on the relevant properties.  Interstate Objs., ECF

19   No. 47-2, at 3.  Interstate argues the chart is inadmissible based on the Best Evidence rule,

20   hearsay and lack of foundation.  *Id.* (citing Fed. R. Evid. 1001, 801).  Again, First Specialty

21   responds that the exhibits are from First Specialty's claim files, and are not offered for the truth of

22   the content, but to show what information was provided to First Specialty when it declined

23   coverage, FS Reply at 5–6, and that the documents are admissions by Interstate so are not barred

24   by the rule against hearsay.  *Id.*  With this clarification, Interstate's objection is OVERRULED,

25   but the court only considers the evidence for the purpose of showing what information First

26   _____

27        [16] Citation is to internal pagination.
         [17] Citation is to internal pagination.

28        [18] Citation is to internal pagination.

1  Specialty was provided, which is not dispositive of whether First Specialty actually had a duty to

2  indemnify, as noted above.

3            Without sufficient evidence to meet its burden to show a triable issue of fact

4  regarding coverage First Specialty, and a lack of any evidence to show when the "property

5  damage" at issue occurred, Interstate's motion for summary judgment is GRANTED as to First

6  Specialty's duty to indemnify in *Alstatt*, and First Specialty's motion is DENIED as to the same.

7                         d.      *Ceccarelli*

8            The same reasoning also applies to *Ceccarelli*.

9            Interstate has met its burden of showing the claims at issue were potentially

10  covered by First Specialty's policy.  The complaint alleges property damage arising from

11  construction defects caused by Centex Homes and its subcontractors.  IUMF 23 (citing *Ceccarelli*

12  Compl., ECF No. 42-6).  Centex Homes' cross-complaint sought indemnity from MS Concrete,

13  presumably for the concrete work it performed at the homes in question.  IUMF 24 (citing Centex

14  Homes Cross-Compl., ECF No. 42-7).  Precise dates of work and property damage are not alleged

15  in either complaint.  IUMF 25 (citing *Ceccarelli* Compl., ECF No. 42-6;[19] Centex Homes Cross-

16  Compl., ECF No. 42-7) (disputed).

17            First Specialty declined to defend or indemnify Interstate's mutual insured, MS

18  Concrete, on the basis that the homes worked on by MS Concrete closed escrow during the three-

19  year gap between the two First Specialty policies issued to MS Concrete.  FSUMF 53–56 (citing

20  FS MSJ, Ex. CC, ECF No. 43-12, at 178 (*Ceccarelli* Homeowner's Matrix)) (disputed).

21  Therefore, First Specialty argues, there is no potential the "property damage" occurred during the

22  first of the policies, and the Prior Completed Work Exclusion applied.  FS MSJ at 26–27.  For the

23  same reasons reviewed above, Interstate objects to the use of Exhibit CC, the homeowners'

24  matrix, and the court OVERRULES that objection, but considers the exhibit only for the limited

25  purpose suggested by First Specialty.  Again, regardless of whether the Prior Completed Work

26

---

27            [19] The complaint alleges, "Plaintiffs have discovered defects and damages within the
periods of the applicable statutes of limitations . . . ."  Ceccarelli Compl., ECF No. 42-6, at 20.

28  The parties do not argue this precludes coverage.

1    Exclusion applies, the close-of-escrow dates are insufficient to create a triable issue of fact

2    regarding coverage under the first policy.

3           Interstate's motion for summary judgment is GRANTED regarding First

4    Specialty's duty to indemnify MS Concrete in *Ceccarelli*, and First Specialty's motion on the

5    same issue is DENIED.

6                              e.      *Paradise Court*

7           *Paradise Court* involved a townhouse project in Nevada that resulted in litigation

8    against developer D.R. Horton, who, in turn, sued the parties' mutual insured, Sunstate for its role

9    as a subcontractor.  *See* FS MSJ at 19 (citing FSUMF 34–35).  In *Paradise Court*, First Specialty

10   raises two different arguments with respect to coverage: (1) the Condominium Exclusion applies

11   to the claim, barring coverage; and (2) the property damage could not have occurred during the

12   policy period.  FS MSJ at 20–21.  In support of the latter argument, First Specialty cites the

13   relevant Chapter 40 Notice of Construction Defects, claiming that, because the Notice predates

14   the start of the First Specialty policy, Sunstate's work must have been completed before the start

15   of the policy, and therefore the Prior Completed Work Exclusion applies.  FSUMF 34 (citing FS

16   MSJ, Ex. S, ECF No. 43-12, at 18–20[20] (*Paradise Court* Chapter 40 Notice); FS MSJ, Ex. GG,

17   ECF No. 43-13, at 27[21] (Barnes Dep. authenticating Ex. 16), 82-84[22] (Barnes Dep., Ex. 16

18   (*Paradise Court* Chapter 40 Notice)).

19          While the date of the Chapter 40 Notice does not conclusively establish that

20   Sunstate's work was completed before the policy began for the reasons explained in the

21   discussion on duty to defend above, the Notice date does raise a question as to whether coverage

22   is precluded; absent any evidence from Interstate showing otherwise, it tends to show the work

23   was likely completed before then.  *See Matsushita*, 475 U.S. at 586.  The result of this analysis

24   differs from the analysis regarding duty to defend, because First Specialty had a duty to defend as

25   long as there was a potential of coverage, whereas the duty to indemnify can be avoided if First

26   _____

27        [20] Citation refers to internal pagination.
          [21] Citation refers to internal pagination.

28        [22] Citation refers to internal pagination.

1   Specialty provides sufficient evidence to show the claims are not covered by the policy.  *See*

2   *United Nat'l Ins. Co*, 120 Nev. at 687–89.

3          First Specialty has raised a genuine dispute of material fact going to coverage, and

4   Interstate's motion for summary judgment on this issue must be DENIED.

5          In deciding whether to grant First Specialty's motion for summary judgment on

6   the issue, the court must decide whether, drawing all inferences in Interstate's favor, no

7   reasonable factfinder could find the claims were covered.  *See Matsushita*, 475 U.S. at 587

8   ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-

9   moving party, there is no 'genuine issue for trial.'").

10         On reply, First Specialty cites to the declaration of Chris Prostitis, Prostitis Decl.,

11   ECF No. 43-5, who served as a claims administrator for First Specialty, in which he describes and

12   attaches an email he received from D.R. Horton's counsel that suggests D.R. Horton's concrete

13   work was performed before June 2007.  *See* Prostitis Decl. ¶ 6; *see also* FS MSJ, Ex. V, ECF No.

14   43-12 at 78 (email from Sunstate's defense counsel to First Specialty claim administrator).

15   However, the email actually states:

16             This email is a follow-up to your prior inquiry whether our client,
              Sunstate Companies, Inc., performed concrete work from September
17             2004 to June 2007 and landscaping work from August 2004 to May
              2006 at the subject property.   Attached please find relevant
18             subcontract agreements to assist you with your coverage position.

19   *Id*.  The attachments are not included.

20         Interstate objects to the e-mail, arguing "there is no evidence or affidavit reflecting

21   the basis for provision of [the work dates] or its reliability."  Interstate Objs., ECF No. 47-2, at 3.

22   Interstate is correct that, without the underlying documents, there is no way to know whether the

23   dates are reliable, nor even whether Sunstate's counsel intended to confirm them at all.  This

24   objection is sustained.

25         The only remaining evidence is the declaration of Mr. Prostitis stating, "based on

26   my review of the other documents and information provided to First Specialty, it appeared to me

27   that Sunstate performed concrete work at the project from September 2004 to June 2007 and

28

                                            29

1   landscaping work from August 2004 to May 2006." Prostitis Decl. ¶ 4, ECF No. 43-5.  The

2   earliest of Sunstate's policies began in 2008.  *See* FSUMF 26.

3             While this evidence is thin, the date of the Chapter 40 Notice and Mr. Prostitis'

4   declaration support granting summary judgment, and Interstate does not offer any evidence as

5   when the work was performed.  Even drawing all inferences in Interstate's favor, no reasonable

6   jury would find the work was performed any other time.  Accordingly, the Prior Completed Work

7   exception applies here, and First Specialty's motion for summary judgment as to its duty to

8   indemnify in *Paradise Court* is GRANTED.

9                           f.      *Wigwam Ranch*

10             The facts as relevant to *Wigwam Ranch* are described in detail above.  First

11  Specialty also declined to indemnify Sunstate in *Wigwam Ranch* based on communications from

12  Sunstate's counsel representing the insured's work was completed in December 2007, before the

13  policy's start date, July 2008, triggering the Prior Completed Work Exclusion. FS MSJ at 22–23;

14  FS MSJ, Ex. X, ECF No. 43-12, at 116 (email from Sunstate's defense counsel to First Specialty

15  claim administrator).  The email from Sunstate's counsel states, "I've reviewed the Sunstate job

16  files I have and it appears Sunstate performed work from 2004 to late 2007 (December 2007)."

17  FS MSJ, Ex. X, ECF No. 43-12, at 116.  It is unclear whether the documents that follow in the

18  exhibit are the "job files" referenced.  *See id.*, Ex. X at 119–149.

19             Interstate objects to the email arguing the statement it contains is hearsay and there

20  is no "evidence or affidavit reflecting the basis for provision of this information or its reliability."

21  Interstate Objs., ECF No. 47-2, at 3.  First Specialty counters that, because Exhibit X is an email

22  from Interstate's counsel to First Specialty, it is an admission by Interstate, through its counsel.

23  FS Reply at 6 (citing Fed. R. Evid. 801(d)(2)).  The parties stipulated that Exhibit X in its entirety

24  was a true and correct copy of documents provided by First Specialty to Interstate pertaining to

25  *Wigwam Ranch*, and that the document was "genuine and authentic."  FS MSJ, Ex. G, ECF No.

26  43-8, at 42.  Interstate's objection is overruled for the purpose of summary judgment, and the

27  court considers the email as an admission by a party-opponent.  *See* Fed. R. Evid. 801(d)(2); *see*

28  *also Burch*, 433 F. Supp. 2d at 1119–20 (court may evaluate evidence in an inadmissible form if

1   the evidentiary objections could be cured at trial); *United States v. McKeon*, 738 F.2d 26, 30 (2d

2   Cir.1984) ("Statements  made by an attorney concerning a matter within his employment may be

3   admissible against the party retaining the attorney[.]" (citation omitted)).   This e-mail is the only

4   evidence offered by either side to show when Sunstate's work was completed; without

5   contradictory evidence or a reason to seriously doubt its authenticity, it is sufficient for First

6   Specialty to overcome the presumption of coverage in this case.  *See Safeco Ins. Co. of Am. v.*

7   *Superior Court*, 140 Cal. App. 4th at 880 ("When a duty to defend is shown, nonparticipating

8   coinsurers are presumptively liable for both the costs of defense and settlement.").  Even drawing

9   all inferences in Interstate's favor, on this scant evidentiary record, no reasonable trier of fact

10  could conclude D.R. Horton's work was performed at any other time.  Accordingly, the Prior

11  Completed Work Exception must apply because the policy did not begin until July 20, 2008,

12  FSUMF 46.

13       First Specialty's motion for summary judgment on the issue is therefore

14  GRANTED and Interstate's motion is DENIED.

15                    g.    Conclusion

16       For the foregoing reasons, Interstate's motion for summary judgment on its

17  declaratory relief claims is GRANTED as to First Specialty's duty to indemnify in *Allred*, *Alstatt*

18  and *Ceccarelli* and DENIED as to First Specialty's duty to indemnify in *Paradise Court* and

19  *Wigwam Ranch*.  First Specialty's motion for summary judgment on Interstate's declaratory relief

20  claims is DENIED as to its duty to indemnify in *Allred*, *Alstatt*, *Ceccarelli* and GRANTED as to

21  *Paradise Court* and *Wigwam Ranch*.

22       B.    Equitable Contribution

23       Interstate's amended complaint includes claims against First Specialty for

24  equitable indemnity, equitable contribution and equitable subrogation for both indemnity costs

25  and defense expenses paid in the underlying cases.  *See* FAC at 1.  However, in its motion for

26  summary judgment, Interstate discusses only equitable contribution; it does not expressly reserve

27  any of its other equitable claims.  *See* Interstate MSJ at 35.  Accordingly, the court addresses only

28  Interstate's arguments regarding its equitable contribution claims.

                                          31

"In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1293 (1998); *see also Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*, 595 F. App'x 670, 672 (9th Cir. 2014*) (applying Fireman's Fund Ins. Co.*, 65 Cal. App. 4th at 1293, to insurance dispute over underlying Nevada state cases). In a situation like this one, "where multiple insurance carriers insure the same insured and cover the same risk each insurer has independent standing to assert a cause of action against [a] coinsurer[] for equitable contribution when it has undertaken the defense or indemnification of the common insured." *Id.*  Equitable contribution allows the coinsurer to sue the non-participating insurer for the "excess it paid over its proportionate share of the obligation on the theory that the debt . . . should be shared by them pro rata in proportion to their respective coverage of the risk." *Id.*  The party seeking contribution bears the burden of  "producing the evidence necessary to calculate" what its "fair share" of the costs is and can only recover from a co-insurer an amount that would "result in the first insurer paying *less* than its 'fair share.'" *Scottsdale Ins. Co.*, 182 Cal. App. 4th at 1028 (emphasis in original); *see also Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*, No. 2:09-CV-01182-JCM, 2012 WL 2589883, at *3 (D. Nev. July 5, 2012) (applying *Scottsdale Ins. Co.* to insurance dispute involving Nevada state cases), *aff'd*, 595 F. App'x 670 (9th Cir. 2014).  Determining what "fair share" means is in the discretion of the trial court. *Scottsdale Ins. Co.*, 182 Cal. App. 4th at 1028 ("In choosing the appropriate method of allocating defense costs among multiple liability insurance carriers, . . . a trial court must determine which method of allocation will most equitably distribute the obligation among the insurers pro rata . . as a matter of distributive justice and equity." (internal quotation marks and citations omitted)).

1.     Effect of Deductible on Equitable Allocation

First Specialty argues the allocation of its share of expenses in the underlying cases should be reduced based on the amount of the deductible in the First Specialty policies. First Specialty does not point to any case law in which a court has actually taken a policy's

1  deductible into account when equitably allocating defense expenses among co-insurers.  *See FS*

2  Opp'n at 22–25 (citing *Signal Cos. Inc. v. Harbor Ins. Co.*, 27 Cal. 3d 359, 369 (1980) (holding

3  "varying equitable considerations" affect the court's determination of equitable allocation);

4  *Montrose Chemical Corp. of Calif. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 665 (1995) (noting

5  allocating cost of indemnity among co-insurers, "may require allocation of contribution amongst

6  all insurers on the risk in proportion to their respective policies' liability limits (such as

7  deductibles and ceilings) . . . .")).  Because equitable contribution arises out of the court's

8  equitable powers, not the insurers' contracts, the deductible threshold contained in one insurer's

9  policy is not dispositive of the amount it owes its co-insurer.  *See Companies, Inc. v. Harbor Ins.*

10 *Co.*, 27 Cal.3d 359, 369 (1980).  Instead, it is governed by "equitable principles . . . [and] these

11 principles do not stem from agreement between the insurers[,] their application is not controlled

12 by the language of their contracts with the respective policy holders."  *Id*.  Moreover, it is the

13 insurer's responsibility to collect the deductible from its insured, the beneficiary of the insurance

14 contract.  Therefore, it would be inequitable to reduce the amount of the equitable contribution

15 owed to Interstate based on the deductible amount in First Specialty's policy.  The court will not

16 reduce the equitable contribution owed to Interstate on this basis.

17                    2.      Equitable Contribution for Defense Expenses

18         Interstate seeks reimbursement from First Specialty, under a theory of equitable

19 contribution, in the amount of fifty percent of defense expenses it claims to have paid in *Alstatt,*

20 *Baker, Paradise Court* and *Wigwam Ranch*.  *See* Interstate MSJ at 35.

21                    a.      *Alstatt, Paradise Court* and *Wigwam Ranch*

22         First Specialty argues Interstate has not met its burden of proof to show the proper

23 allocation of defense costs in *Alstatt*, *Paradise Court,* and *Wigwam Ranch*, because, in all three

24 cases, there is evidence to suggest another co-insurer contributed to the insured's defense.

25         In *Alstatt*, First Specialty points out that Interstate has admitted another co-insurer,

26 Navigators, paid for a portion of the settlement, but Interstate has not provided evidence

27 regarding whether Navigators contributed to the insured's defense expenses.  *See* FS Opp'n at

28 31–32; FS Add'l UMF 57, ECF No. 46-2, at 21 (citing FS Opp'n, Ex. III, ECF No. 46-5, at 16,

                                          33

1
2
3

19[23] (Barnes testifying Navigators contributed $10,000 to settlement in *Alstatt* and Interstate contributed $80,000)).

4

Similarly, in *Paradise Court* and *Wigwam Ranch*, First Specialty argues there is

5
6
7
8
9
10
11
12

evidence suggesting at least on other insurer, Dallas National Insurance Company, participated in Sunstate's defense.  FS Add'l UMF 56 (citing FS Opp'n, Ex. GGG, ECF No. 46-5, at 82 (Dallas National Insurance Company letter regarding participation in Sunstate Defense); Ex. JJJ, ECF No. 46-5, at 137 (letter to Fireman's Fund Insurance Company from Interstate's counsel noting Dallas is participating in defense); Ex. III, ECF No. 46-5 (Barnes Dep.),[24] at 2–6 (testifying that she cannot recall if Dallas National's contributed to defense of Sunstate); *id.* at 22–28 (testifying as to potential Dallas National contributed); *id.* at 34 (Barnes Dep. Exhibit 22 (Dallas National Insurance Company letter regarding participation in Sunstate defense))).

13
14
15
16
17
18
19
20
21
22
23
24
25

Yet, in all three cases, Interstate asks for fifty percent of the expenses it paid defending the insured in both the actions, without presenting evidence whether Dallas National or any other co-insurer paid a share of the defense costs.  Interstate MSJ at 35.  Hypothetically, if Dallas National and Interstate contributed equally to the defense, for Interstate to receive fifty percent from the third, non-participating insurer would be inequitable, because First Specialty would owe both Dallas National and Interstate roughly thirty-three percent of each of their costs, not fifty percent.  *See Scottsdale Ins. Co.*, 182 Cal. App. 4th at 1033, 10-35–36 (rejecting co-insurer's argument that "it should receive equitable contribution in the amount of half of the amounts it had paid, regardless of whether any other insurers shared in the defense or indemnity of any of the common insureds").  Similarly, without any evidence of the amounts paid by other possible co-insurers, Interstate has not met its burden to show no genuine dispute of material fact exists regarding the amount First Specialty owes as equitable contribution in *Alstatt*, *Paradise Court* and *Wigwam Ranch*.  *See id.* at 1028.

26

/////

27
28

---

[23] Citations are to internal pagination.
[24] Citations are to internal pagination.

Summary judgment on Interstate's equitable contribution claim as to *Alstatt*, *Paradise Court* and *Wigwam Ranch* is DENIED.

        b.     <u>*Baker*</u>

As to *Baker*, First Specialty argues there is not sufficient evidence to show Interstate paid a settlement of $15,000 in *Baker*, and therefore its calculation of what First Specialty owes, after subtracting the $25,000 deductible Interstate received from the insured, is inaccurate. FS Opp'n at 30–31. Interstate's only evidence of the settlement is a copy of the global settlement agreement, which does not show precisely how much Interstate paid. *See* FS Reply at 19; Nelson Decl., Ex. W (*Baker* Settlement Agreement), ECF No. 41-23. First Specialty offers the deposition of Interstate's Rule 30(b)(6) witness, Leslie Barnes, who reviewed the relevant litigation record showing "payment history." Barnes Dep., Ex. 30, ECF No. 43-13 at 153 (redacted). Barnes testified that the record "as it's been reflected doesn't reflect settlement payments, just expense payments." FS MSJ, Ex. GG (Barnes Dep.) at 40. This testimony reinforces the absence of evidence supporting Interstate's claim that it paid a $15,000 settlement in the case.

Without more, Interstate has not met its burden of showing there is no genuine dispute of material fact as to First Specialty's equitable contribution, and summary judgment on this claim is DENIED.

        3.     <u>Equitable Contribution for Settlement Costs</u>

Regarding indemnification, Interstate argues that First Specialty's pro rata share of the settlement costs should be determined by "pooling" occurrence limits of liability and determining each carrier's proportionate exposure. Interstate MSJ at 25 (citing *CNA Casualty of Calif. v. Seaboard Sur. Co* 176 Cal. 3d 598, 619–20 (1986)). Interstate argues each Interstate policy and each First Specialty policy has a "per occurrence" limit of $1,000,000, therefore the insurers' contributions should follow a one-to-one ratio. *Id.* at 35–36. In *Allred*, *Alstatt* and *Ceccarelli*,, the three underlying cases for which the court has found First Specialty had a duty to indemnify, only one First Specialty policy was implicated and one Interstate policy

1    was implicated, and therefore Interstate requests here fifty percent of the settlement costs it paid

2    in those cases.  *Id.*

3            Interstate has provided evidence to show: (1) it settled the case against insured

4    Charles Wheeler in *Allred* for $1,500, IUMF 6 (citing Nelson Decl., Ex. G (Settlement

5    Agreement), ECF No. 41-7; Ex. H (proof of payment of $1,500), ECF No. 41-8) (disputed); (2) it

6    settled the case against insured MS Concrete in *Alstatt* by funding $80,000 of a $90,000

7    settlement payment, IUMF 13 (disputed); Nelson Decl., Ex. O (Allocation Demand), ECF No.

8    41-15; *id.* Ex. P (Proof of Payment), ECF No. 41-16; and (3) that it settled the case against

9    insured MS Concrete in *Ceccarelli* for $4,500, IUMF 29 (citing Nelson Decl., Ex. BB (Settlement

10   Demand), ECF No. 41-28; Ex. CC (Proof of Payment and Settlement Agreement), ECF No. 41-

11   29) (disputed).

12           First Specialty objects to all of Interstate's evidence on the basis that it lacks

13   foundation, because Mr. Nelson, who authenticated the exhibits, "is not qualified to declare that

14   any portion of any claim file is a true and correct copy of what he believes it to be."  FS Evidence

15   Objs., ECF No. 46-1, at 2.  Again, the parties stipulated to the authenticity of these documents.

16   Interstate Responses to Objs., ECF No. 51-2, at 2 (citing ECF No. 43-8 at 39).  The court

17   overrules First Specialty's objection, and considers the evidence in its current form, because the

18   evidentiary objections could be cured at trial.  *Burch*, 433 F. Supp. 2d at 1119–20.  Otherwise,

19   First Specialty does not make any argument against Interstate's showing in *Allred* and *Ceccarelli*,

20   and the court finds Interstate has met its burden of demonstrating its settlement expenses for

21   purposes of summary judgment. The court finds a fifty-fifty split of those expenses is equitable.

22           Accordingly, Interstate's motion for summary judgment on the equitable

23   contribution claims as to indemnification in *Allred* and *Cecarreli* is GRANTED.

24           As explained above, Interstate's claim regarding *Alstatt* faces the same infirmities

25   as its claims in *Paradise Court* and *Wigwam Ranch,* exacerbated by the fact that Interstate has not

26   explained why it was liable for nearly 90 percent of the settlement, while the co-insurer paid the

27   remaining 10 percent.  *See Scottsdale Ins. Co.*, 182 Cal. App. 4th at 1033.  Without more

28   evidence as to what Interstate's "fair share" should be, the court cannot conclude First Specialty

is required to contribute fifty percent of Interstate's settlement cost. Interstate's motion for summary judgment as to its equitable contribution claim in *Alstatt* is DENIED.

        4.   <u>Conclusion</u>

Interstate's motion for summary judgment of its equitable contribution claims is DENIED as to *Alstatt*, *Baker*, *Paradise Court* and *Wigwam Ranch*. The motion is GRANTED as to its equitable contribution claims for indemnity payments in *Allred* and *Ceccarelli*.

V.   <u>CONCLUSION</u>

For the foregoing reasons, it is hereby ORDERED that:

1.   Interstate's motion for summary adjudication is GRANTED as to its claims that First Specialty owed the insured a duty to defend in *Alstatt*, *Baker*, *Paradise Court* and *Wigwam Ranch.* First Specialty's motion is DENIED as to the same claims.

2.   Interstate's motion for summary adjudication is GRANTED as to its claims that First Specialty owed the insured a duty to indemnify in *Allred*, *Alstatt* and *Ceccarelli*. First Specialty's motion is DENIED as to the same claims.

3.   Interstate's motion is DENIED as to its claims that First Specialty owed the insured a duty to indemnify in *Paradise Court* and *Wigwam Ranch.*

4.   First Specialty's motion is DENIED as to Interstate's claim that First Specialty owed the insured a duty to indemnify in *Paradise* Court.

5.   First Specialty's motion is GRANTED as to Interstate's claim that First Specialty owed the insured a duty to indemnify in *Wigwam Ranch*.

6.   Interstate's motion is GRANTED as to its claims for equitable contribution from First Specialty for *Allred* and *Ceccarelli*. Interstate's motion is DENIED as to its equitable contribution claims for *Alstatt*, *Baker*, *Paradise Court* and *Wigwam Ranch*.

DATED: August 28, 2020.

                        CHIEF UNITED STATES DISTRICT JUDGE